RECEIVED-CLERK
U.S. DISTRICT COURT

2004 JAN 22  A 9: 33

**McKENNA, MULCAHY & McKENNA, LLP**
96 Park Street
Montclair, New Jersey 07042
973-509-0050
Attorneys for Plaintiff (KAM4734)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Timothy J. McIlwain, | : |
| Plaintiff, | : |
| v. | : |
| OUTTASK, INC., a Delaware Corporation, OPENHIRE, INC., a Delaware Corporation, JOHN PERELESS, COURTNEY PERELESS, THOMAS DePASQUALE, CHRIS McCRAE, PATRICK PALMIERI, GIORDANO, HALLERAN & CIESLA, PC., JAY S. BECKER, ESQ., MICHAEL A. BRUNO, ESQ., STEPHEN D. BIRD, ESQ., PAUL T. COLELLA, ESQ., and JOHN DOES 1 through 100, | : |
| Defendants. | : |

Civil Action No. 04-258 (MLC)

**COMPLAINT and JURY DEMAND**

## INTRODUCTION

1.  Plaintiff, TIMOTHY J. McILWAIN ("Plaintiff"), a citizen of the State of California, brings this action against defendants, OUTTASK, INC., OPENHIRE, INC., JOHN PERELESS, COURTNEY PERELESS, THOMAS DePASQUALE, CHRIS McCRAE, PATRICK PALMIERI, GIORDANO, HALLERAN & CIESLA, PC., JAY S. BECKER, ESQ., MICHAEL A. BRUNO, ESQ., STEPHEN D. BIRD, ESQ., PAUL T. COLELLA, ESQ., and DOES 1 through 100, for general, compensatory, punitive, and statutory damages, prejudgment interest, costs and attorneys' fees and other appropriate

and just relief resulting from defendants' unlawful and tortious conduct, and as grounds therefore alleges:

## PARTIES

2.  Plaintiff, TIMOTHY McILWAIN, presently, and at all times relevant to this action, is an individual residing in the County of Los Angeles, State of California.

3.  Plaintiff is informed and believes, and thereon alleges, that defendant, OUTTASK, INC. (hereinafter "OUTTASK"), was and now is a corporation organized and existing under and by virtue of the laws of the State of Delaware, authorized to and regularly conducting business in the State of Virginia.

4.  Plaintiffs informed and believes, and thereon alleges, that defendant, OPENHIRE, INC. (hereinafter "OPENHIRE"), was and now is a corporation organized and existing under and by virtue of the laws of the State of Delaware, authorized to and regularly conducting business in the State of New Jersey.

5.  Plaintiff is informed and believes, and thereon alleges, that, at all relevant times, JOHN PERELESS (hereinafter "PERELESS"), was and is a shareholder, director and alter ego of THE WORKS, and either an agent, managing agent, employee, general employee, special employee, servant, president, Chief Executive Officer, corporate secretary or partner of THE WORKS, and also a shareholder, director and alter ego of

C3942KAM                            2

OPENHIRE, Chief Executive Officer, and Corporate Secretary of OPENHIRE, the President and Officer of OPENHIRE, and either an agent, managing agent, employee, general employee, special employee, servant or partner of OPENHIRE, as well as a resident of the State of New Jersey.

6. Plaintiff is informed and believes, and thereon alleges, that, at all relevant times, COURTNEY PERELESS (hereinafter "COURTNEY"), was and is a shareholder, director and alter ego of THE WORKS, and either an agent, managing agent, employee, general employee, special employee, servant, Chief Executive Officer or partner of THE WORKS, and also a shareholder, director and alter ego of OPENHIRE, Chief Executive Officer, and Corporate Secretary of OPENHIRE, the President and Officer of OPENHIRE, and either an agent, managing agent, employee, general employee, special employee, servant or partner of OPENHIRE, as well as a resident of the State of New Jersey.

7. Plaintiff is informed and believes, and thereon alleges, that, at all relevant times, CHRIS McCRAE (hereinafter "McCRAE"), was and is a shareholder, director and alter ego of THE WORKS, and either an agent, managing agent, employee, general employee, special employee, servant or partner of THE WORKS, and also a shareholder, director and alter ego of OPENHIRE, the President, Chief Executive Officer, and Corporate Secretary of OPENHIRE, the President and Chief Technology Officer of OPENHIRE, and either an agent, managing agent, employee, general employee, special

employee, servant or partner of OPENHIRE, on the other hand, as well as an individual and resident of the State of New Jersey.

8.  Plaintiff is informed and believes, and thereon alleges, that, at all relevant times, defendant, KEVIN DEICKMAN (hereinafter "DEICKMAN"), was and is a shareholder, director and alter ego of THE WORKS, and either an agent, managing agent, employee, general employee, special employee, servant or partner of THE WORKS, as well as an individual and resident of the state of New Jersey.

9.  Plaintiff is informed and believes, and thereon alleges, that, at all relevant times, defendant, PATRICK PALMIERI (hereinafter "PALMIERI"), was and is a shareholder, director , alter ego of THE WORKS, and either an agent, managing agent, employee, general employee, special employee, servant or partner of THE WORKS, and also a shareholder, director and alter ego of RECRUIT 24/7, the President, Chief Executive Officer, and Corporate Secretary of RECRUIT 24/7, the President and Chief Executive. RECRUIT 24/7, and either an agent, managing agent, employee, general employee, special employee, servant or partner of RECRUIT 24/7, on the other hand, as well as an individual and resident of the State of New Jersey.

10. Plaintiff is informed and believes, and thereon alleges, that, at all relevant times, 1t, THOMAS DePASQUALE (hereinafter "DePASQUALE"), was and is a shareholder, director and alter ego of THE WORKS and either an agent, managing agent, employee, general employee, special employee, servant or partner of THE WORKS, and

also a shareholder, director and alter ego of OUTTASK, the President, Chief Executive

Officer, and Corporate Secretary of OUTTASK, the President and Chief Executive

Officer of OUTTASK, and either an agent, managing agent, employee, general

employee, special employee, servant or partner of OUTTASK, as well as an individual

and resident of the State of Virginia.


11. Plaintiff is informed and believes, and thereon alleges, that defendant,

GIORDANO, HALLERAN & CIESLA, PC., (hereinafter "GIORDANO,

HALLERAN"), was at all times relevant to this action a law firm of the State of New

Jersey.


12. Plaintiff is informed and believes, and thereon alleges, that, at all relevant

times, defendant, JAY S. BECKER, ESQ. (hereinafter "BECKER"), was and is an

attorney at law of the state of New Jersey and employed with the GIORDANO,

HALLERAN firm.


13. Plaintiff is informed and believes, and thereon alleges, that, at all relevant

times, defendant, STEPHEN D. BIRD, ESQ. (hereinafter "BIRD"), was and is an

attorney at law of the state of New Jersey and employed with the GIORDANO,

HALLERAN firm.


14. Plaintiff is informed and believes, and thereon alleges, that, at all relevant

times, defendant, MICHAEL D. BRUNO, ESQ. (hereinafter "BRUNO"), was and is an

attorney at law of the state of New Jersey and employed with the GIORDANO,
HALLERAN firm.

15. Plaintiff is informed and believes, and thereon alleges, that, at all relevant
times, defendant, PAUL T. COLELLA, ESQ., Esq. (hereinafter "BRUNO"), was and is
an attorney at law of the state of New Jersey and employed with the GIORDANO,
HALLERAN firm.

16. The true names and capacities, whether corporate, individual associate or
otherwise, of defendants JOHN DOES 1 through 100, inclusive, are presently unknown
to plaintiff, who therefore sues defendants does 1 through 100 by such fictitious names.
Plaintiff will amend this Complaint to set forth the true names and capacities of said
defendants when these names and/or identities are ascertained by plaintiff.

17. Plaintiff is informed and believes, and thereon alleges, that THE WORKS
USA, INC., aka INFOWORKS USA, INC., (hereinafter "THE WORKS"), was and now
is a corporation organized and existing under and by virtue of the laws of the State of
New Jersey, authorized to and regularly conducting business in the State of California.

18. Plaintiff is informed and believes, and thereon alleges, that PERELESS
SYSTEMS, INC., aka PERELESS BUILT, INC., or PERELESS.COM, INC (hereinafter
"PERELESS INC"), was and now is a corporation organized and existing under and by

virtue of the laws of the State of New Jersey, authorized to and regularly conducting business in the State of New Jersey.

19. Plaintiff is informed and believes, and thereon alleges, that MINDFIND, INC., (hereinafter "MINDFIND"), was and now is a corporation organized and existing under and by virtue of the laws of the State of New Jersey, authorized to and regularly conducting business in the State of New Jersey.

20. Plaintiff is informed and believes, and thereon alleges, that ORAM, INC., (hereinafter "ORAM"), was and now is a corporation organized and existing under and by virtue of the laws of the State of New Jersey, authorized to and regularly conducting business in the State of New Jersey.

21. Plaintiff is informed and believes, and thereon alleges, that TECHLOGIC, INC., (hereinafter "TECHLOGIC"), was and now is a corporation organized and existing under and by virtue of the laws of the State of New Jersey, authorized to and regularly conducting business in the State of New Jersey.

22. Plaintiff is informed and believes, and thereon alleges, that RECRUIT 24/7, INC., (hereinafter "RECRUIT 24/7"), was and now is a corporation organized and existing under and by virtue of the laws of the State of New Jersey, authorized to and regularly conducting business in the State of New Jersey.

23. Plaintiff is informed and believes, and thereon alleges, that KDI, INC., (hereinafter "KDI"), was and now is a corporation organized and existing under and by virtue of the laws of the State of New Jersey, authorized to and regularly conducting business in the State of New Jersey, County of Monmouth.

24. Plaintiff is informed and believes, and thereon alleges, that at all relevant times hereto, each of the named defendants was an agent, employee, general employee, special employee, employer, general employer, special employer, alter ego, joint venturer, servant, or co-conspirator of one or more of the other defendants and, as such, was acting within the course and scope of said agency, employment, alter ego and/or joint venture, and that each and every defendant aided and/or assisted the other defendants in committing the wrongful acts alleged herein.

25. Plaintiff is informed and believes, and thereon alleges, that defendants, and each of them, conspired and agreed between and/or among themselves to do the acts complained of herein and were, in doing such acts, acting pursuant to and in furtherance of said conspiracy, and each defendant sued herein is, jointly and severally, responsible and liable to plaintiff for the damages alleged herein.

26. Plaintiff is informed and believes, and thereon alleges, that there exists and, at all times alleged herein, there existed a unity of ownership between PERELESS, and OPENHIRE and THE WORKS, such that any individuality and separateness between PERELESS, and OPENHIRE and THE WORKS, have ceased and that

C3942KAM                                  8

PERELESS completely controlled, dominated, managed and operated said corporations to suit said separate and individual convenience. OPENHIRE and THE WORKS were and are mere conduits for PERELESS, who dominated and controlled the business practices to such an extent that any individuality or separateness of OPENHIRE and THE WORKS, on the one hand, and PERELESS, on the other hand, does not and, at all times herein alleged, did not exist.

## JURISDICTION AND VENUE

27. This Court has original jurisdiction over these claims in accordance with 28 U.S.C. § 1332 because the matter in controversy exceeds the value of $100,000 and is between citizens of different States.

28. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391, because Defendant OUTTASK is located in New Jersey and a substantial part of the events and/or omissions giving rise to plaintiff's claims occurred in or is substantially related to New Jersey

## GENERAL FACTUAL ALLEGATIONS

29. Although plaintiff is a resident of the State of California, plaintiff was at all times relevant to this action an attorney admitted to practice law in the State of New Jersey.

30. On or about April 26, 1999, Plaintiff executed a valid written agreement with THE WORKS to be employed as General Counsel and Senior Vice President at THE WORKS.

31. THE WORKS is essentially a human resource firm that provides outside services and outsourcing for a client's internal business activities and functions, including employment recruitment.

32. Prior to accepting employment, plaintiff was induced to take employment because of, among other things, the opportunities that existed in the electronic recruiting industry. One such opportunity was the need for an applicant service provider that would centralize and analyze all recruiting data. Also, given the fact that the majority of recruiters, headhunters and corporate human resource departments use more than one job board (e.g. Monster.com or Dice), there was and is a need for a technology product that could scrap and download resumes, therefore, reducing the workload involved in data entry.

33. In his capacity as General Counsel and Senior Vice President, plaintiff was required to direct, maintain, handle and update the company's legal matters. In the course of plaintiff's employment as the company's Senior Vice President, he was required to promote business development and attract potential alliances. While employed with THE WORKS, plaintiff also maintained his own sports marketing and law practice and was able to procure a retainer from professional hockey player, David

Babych. Through plaintiff, Mr. Babych initiated a lawsuit (the "Babych Lawsuit") asserting medical malpractice and fraud against his former employer the Philadelphia Flyers.

34. Prior to June 11, 1999, defendants were in the process of attracting potential investors to either purchase THE WORKS and/or its related entities or raise capital to expand the business. The development of the OPENHIRE product was on its way to completion and the company was looking to outsource the technological development.

35. After June 11, 1999, PERELESS decided to develop the OPENHIRE product and to retain the intellectual property rights thereto.

36. In or around January 2000, plaintiff was granted one percent (1%) ownership interest in THE WORKS. Thereafter, however, the entire technology and Internet sector of the economy suffered a market correction on stock valuations resulting in lower valuations and capital constriction. While not a public company, the value of THE WORKS and its related entities began to decrease and become less attractive to prospective buyers or partners. At that time, THE WORKS' two controlling equity holders PERELESS and John Mulcahy ("MULCAHY") had began to feud between themselves regarding the business direction of THE WORKS.

37.  Prior to March 2000, PERELESS, McCRAE, and DePASQUALE obtained new corporate counsel and decided to close the California offices of THE WORKS. PERELESS, McCRAE, and DePASQUALE also decided that OPENHIRE should be sold as a separate company and a separate product from THE WORKS and its related entities so as to avoid corporate debt and liabilities and to avoid obligations to me. The transfer of the OPENHIRE product rendered THE WORKS useless and without any appreciable value.

38.  In or around March 2000, there was a change of control at THE WORKS with the addition of DePASQUALE as the director of the WORKS. At a November 26, 2001 binding arbitration, as set forth below, the arbitrator found, among other things, that THE WORKS underwent a corporate change of control with the addition of DePASQUALE.

39.  In or around March 2000, PERELESS, McCRAE and DePASQUALE established and incorporated OPENHIRE, INC. out of PERELESS's New Jersey home as a Delaware Corporation doing business in New Jersey.

40.  On or about April 4, 2000, DePASQUALE, through OUTTASK, signed and executed an agreement to co-brand OUTTASK and OPENHIRE and cross-sell their products. OUTTASK was established by DePASQUALE and PERELESS.

41.  THE WORKS has the rights to commissions for three (3) years. Also, THE WORKS had the right to audit the commissions paid on the OPENHIRE product

and any discrepancy revealed by THE WORKS' audit would result in OUTTASK paying the cost of the audit.

42. On July 12, 2000, in retaliation for plaintiff exercising his right to compensation after a corporation reorganization and change of control to DePASQUALE and OUTTASK, plaintiff was terminated without cause. Plaintiff's employment agreement only permitted termination of his employment for cause.

43. On August 17, 2000 in Los Angeles, California, plaintiff initiated an arbitration proceeding to determine whether THE WORKS had undergone a corporate reorganization and change of control when DePASQUALE, the Chief Executive Officer of OUTTASK became the director of THE WORKS thus requiring plaintiff be compensated immediately for his equity ownership interest. That binding arbitration proceeding also was to determine whether THE WORKS breached its April 26, 1999 employment contract with plaintiff. The arbitration addressed plaintiff's wage compensation claim against THE WORKS only.

44. On August 24, 2000, plaintiff received an electronic message (i.e., e-mail) from BRUNO threatening to file criminal charges for driving a car that was provided to plaintiff by THE WORKS.

45. On August 28, 2000, defendants filed false criminal charges against plaintiff at the West Long Branch Police Department in New Jersey accusing plaintiff of

stealing a $60,000 BMW 540i. Those accusations were false, as defendants provided the vehicle for plaintiff for his use, and knew that plaintiff's entitlement to a car or $1,000 per month for a car was the subject of the August 17, 2000 arbitration proceeding.

46. On September 30, 2000, as a direct result of defendants' false accusations, plaintiff was required to stand trial in West Long Branch Municipal Court for theft and embezzlement of THE WORKS' BMW 540i. That criminal action caused plaintiff considerable hardship and embarrassment as he plaintiff was wrongfully accused of grand theft auto charges and was required to make arrangements in New Jersey to defend the criminal charges and forced to obtain a new vehicle while in dire financial straits.

47. Prior to plaintiff's criminal trial, and as a direct result of defendants' false accusations, the Hermosa Beach Police launched an investigation. A police officer questioned plaintiff at his apartment and place of business to investigate the allegedly stolen car. That caused great shame and embarrassment as well as anxiety and hardship to plaintiff.

48. On December 7, 2000 Plaintiff through his counsel appeared in West Long Branch Municipal Court where he faced charges of embezzlement and grand theft auto. Defendants did not appear and the trumped up criminal case was promptly dismissed. Plaintiff incurred attorneys' fees throughout the tenure of the criminal case.

49. Defendants challenged the enforceability of the arbitration clause of the employment agreement, which expressly stated that any disputes between the parties must be arbitrated before the American Arbitration Association. Defendants filed two separate motions to change venue to New Jersey with legal letter briefs, but the American Arbitration Association ruled on September 29, 2000 and October 17, 2000 that the arbitration clause was valid and the American Arbitration Association had jurisdiction in Los Angeles, California.

50. Defendants confiscated plaintiff's mail which included documents related to a medical malpractice complaint (the "Babych Lawsuit"). The complaint in the Babych Lawsuit was filed on August 7, 2000. A filed copy was sent to plaintiff for service on the defendants in that action. Defendants did not forward that complaint until October 11, 2000. Instead, defendants retained plaintiff's mail and allowed THE WORKS to use plaintiff's mail as evidence against plaintiff on the change of venue issue being arbitrated. THE WORKS filed a letter brief on October 13, 2000 using plaintiff's August 7, 2000 legal documents as principal argument that the arbitration should be in New Jersey.

51. Since the Babych Lawsuit complaint was withheld from plaintiff for over three months, plaintiff was subjected to affidavit of merit filing difficulties that resulted in many hours of legal work to avoid dismissal of the Babych Lawsuit.

52. On November 8, 2000, after failing in their efforts to change venue to New Jersey through the arbitration process as required, defendants filed a complaint in Superior Court of New Jersey, Monmouth County, which attached a fictitious employment relationship document and non-compete covenant instead of the duly executed April 26, 1999 agreement that was already in dispute and specifically addressed the non-competition covenant.

53. On or around February 28, 2001, defendants agreed to file a Stipulation of Dismissal on all civil charges brought against plaintiff. Defendants, also, expressly agreed that the Stipulation of Dismissal did not include any of plaintiff's affirmative claims (e.g. malicious prosecution).

54. Since the dismissal, plaintiff has been unable to procure additional funding or corporate alliances and NotJobs.com, Inc., was forced to cease its operations.

55. Furthermore, plaintiff's personal credit history and status has been damaged due to defendants' actions

56. Plaintiff had several interested investors, all of which were canceled and refused to invest with plaintiff after plaintiff was forced to defend a meritless and maliciously filed order to show cause that would stop NotJob.com's operations. Since plaintiff was defending a civil action for the alleged restrictive covenant not to compete,

plaintiff's consultants were not willing to help plaintiff obtain funding and/to establish corporate alliances.

57. On July 9, 2001 OUTTASK acquired OPENHIRE. All the former employees of THE WORKS were transferred and the intellectual property created by THE WORKS were repackaged as OPENHIRE INC. and ultimately transferred to OUTTASK. Upon information and belief, the transfer was without consideration. THE WORKS and its officers effectively and improperly discharged their liabilities by renaming and allowing the original company to cease operations. PERELESS extracted all assets out of his name and went into business with PALMIERI as RECRUIT 24/7 doing the exact business as THE WORKS and NotJobs.com without any debts or liabilities. PERELESS and McCRAE became the sole beneficiaries of the OPENHIRE/OUTTASK acquisition.

58. On November 20, 2001 the McILWAIN v. THE WORKS arbitration was held and the final award issued on November 26, 2001.

59. This arbitration award was reduced to Judgment August 21, 2002 and entered in the docket of the Superior Court of California, County of Los Angeles (the "Arbitration Judgment").

60. The Arbitration Judgment was filed and recognized in the State of new Jersey.

61. Plaintiff is presently attempting to execute upon and obtain satisfaction of the Arbitration Judgment in New Jersey. Due to the actions of defendants, including the Giordano defendants, plaintiff's collection efforts have been unlawfully hindered, delayed and obstructed in New Jersey. Defendants' actions in hindering collection include but are not limited to transferring The Works' assets to OUTTASK.

### FIRST CAUSE OF ACTION
(Fraudulent Conveyance)

62. Plaintiff refers to, repeats, and realleges each of the allegations in Paragraphs 1 through 61 of this Complaint and incorporate said allegations into the First Cause of Action as though fully set forth herein.

63. Defendants, specifically PERELESS and COURTNEY, along with MULCAHY, represented and promised to honor the April 26, 1999 agreement with plaintiff prior to his accepting employment and relocating from his New Jersey law firm.

64. Defendants knew the OPENHIRE company and product was the alter ego and property of THE WORKS because: (1) the technology was designed for THE WORKS' electronic recruiting business model that had been in existence since 1996; (2) the resources of THE WORKS including but not limited to monies spent and employees' focus was to complete the OPENHIRE product; (3) OPENHIRE was incorporated and sold as an ultra vires act by PERELESS, COURTNEY, McCRAE, and DePASQUALE to

allow plaintiff's just claims against THE WORKS to be defeated. Defendants, and each of them, also knew that plaintiff would be unable to collect such debt as a result of OPENHIRE being established as a separate corporate entity without the pending liabilities.

65. Despite THE WORKS' known debt to plaintiff, defendants transferred intellectual property rights to OPENHIRE as a separate corporation and as a wholly new enterprise.

66. Defendants, with complete knowledge of debts owed to plaintiff, intentionally suppressed and kept hidden from plaintiff material facts about the transfer of THE WORKS' intellectual property rights to OPENHIRE.

67. Upon information and belief, the GIORDANO, HALLERAN firm, BIRD, BRUNO, BECKER and COLELLA, knowingly participated in and assisted and aided the other defendants in their effort to transfer the OPENHIRE product and other assets out of THE WORKS without consideration and in an effort and scheme to deprive plaintiff of his equity ownership interest.

68. Plaintiff reasonably and justifiably relied on defendants' representations and promises that they would pay plaintiff's equity interest when there was a change of control or an acquisition of THE WORKS or any of its related entities or products. Because of defendants' material nondisclosures and misrepresentations, plaintiff lacked

complete information regarding the defendants' intention of selling OPENHIRE as a separate corporation and product of THE WORKS and the likelihood of transferring the intellectual property rights of THE WORKS would render it valueless with no ability for plaintiff to collect money due and owed to him.

69. Defendants are aware of the dependency of plaintiff on receiving all monies due him.

70. Defendants sought to induce plaintiff's reliance on defendants' misrepresentations in disclosing the truth about avoiding corporate debts and liabilities by transferring THE WORKS' intellectual property rights to OPENHIRE, a separate entity.

71. Defendants engaged in their fraudulent course of conduct for the purpose of avoiding the payment to plaintiff, despite defendants' duty to pay plaintiff after THE WORKS and/or its related entities were acquired or a change of control occurred within the organization. The obligation to compensate plaintiff arose from his equity ownership.

72. As a direct and proximate result of defendants' fraudulent conveyance misrepresentations, nondisclosures, and active concealment, plaintiff has suffered and will continue to suffer substantial injuries and damages as herein described.

73. The conduct of the defendants was despicable, oppressive, malicious, fraudulent and in knowing disregard of plaintiff's rights, for which defendants should be assessed exemplary damages in an appropriate amount to punish defendants.

**WHEREFORE**, plaintiff demands judgment against defendants, individually and jointly, as follows:

a. For compensatory damages;

b. For special damages;

c. For punitive damages;

d. For all reasonable attorneys fees and all costs of suit herein incurred; and

e. For such other and further relief as the court may deem just and appropriate.

## SECOND CAUSE OF ACTION
(Malicious Prosecution)

74. Plaintiff restates and incorporates by reference each and every allegation contained in Paragraphs 1 through 73, inclusive, as though fully set forth herein.

75. On or about August 28, 2000, in Monmouth County, New Jersey, defendant PERELESS filed a criminal complaint of grand theft and embezzlement with the Long Branch Police Department. The complaint accused plaintiff of violating NJSA Section 2C:20-3A of the Penal Code, a felony. That caused an investigation by the Hermosa Beach Police into plaintiff's alleged grand theft and embezzlement. Plaintiff

was not arrested because the car was not in his possession; however, Hermosa Beach

Police advised plaintiff that if he had been in possession he would have been arrested at

gunpoint.

76. A trial was held on December 7, 2000, in the Long Branch Municipal

Court defendant did not appear. At that time the court dismissed the proceeding for lack

of evidence against plaintiff.

77. Defendant acted without probable cause in initiating the prosecution of

plaintiff in that he did not honestly, reasonably, and in good faith believe plaintiff to be

guilty of the crimes charged. Defendant was aware that the car was rightfully in

plaintiff's possession due to defendants' contractual obligation and plaintiff was being

falsely accused by defendant to gain an advantage in the pending civil arbitration

procedure wherein plaintiff was entitled and sought wage compensation.

78. Defendant acted maliciously in instigating the criminal prosecution in a

concerted effort to retaliate against plaintiff for requesting payment from and

commencing arbitration against defendant all in an effort or desire to harass, annoy and

harm plaintiff.

79. As a proximate result of the criminal prosecution initiated by defendant,

plaintiff has been damaged in an amount to be determined at trial.

80. As a further proximate result of the criminal prosecution so initiated by defendant, plaintiff incurred the cost of attorneys' fees defending against the prosecution. Plaintiff also had to purchase a new automobile prior to the conclusion of the criminal matter.

81. Defendant's acts were willful, wanton, malicious, and oppressive in that defendant was fully aware that plaintiff did not steal any car but instead had been in possession of the automobile since 1998 when defendants induced plaintiff to leave his New Jersey law firm. Defendant's acts warrant awarding punitive damages.

82. Furthermore, on or about November 8, 2000, in Monmouth County, New Jersey, defendants, PERELESS, the GIORDANO, HALLERAN firm and BECKER, BIRD, BRUNO and COLELLA caused to be filed a civil complaint in the Superior Court of New Jersey, Chancery Division. That complaint accused plaintiff of, among other things, breach of contract and violation of a non-competition covenant. That lawsuit was brought in the name of THE WORKS as the sole plaintiff and forced plaintiff to retain New Jersey counsel to defend against that lawsuit including opposing an order to show cause hearing on December 7, 2000. Plaintiff also filed the appropriate pleadings and other responses. Defendants initiated that lawsuit as part of their scheme to harass, annoy and prevent plaintiff from obtaining the wage compensation due him.

83.   On or around February 28, 2000, a Stipulation of Dismissal was filed in the New Jersey Superior Court action in Monmouth County.  Plaintiff expressly reserved and defendants acknowledged plaintiff's right to pursue affirmative claims, including but not limited to malicious prosecution.

84. Defendants acted with reckless disregard in initiating the civil claim against plaintiff in that they did not honestly, reasonably and in good faith believe plaintiff had violated any non-competition covenant.  Defendants were aware that plaintiff was already enforcing the terms of the contract in an arbitration wherein the contract, in question, expressly states that there is no non-competition clause.

85. Defendants acted maliciously in instigating the civil complaint in a concerted effort to retaliate against plaintiff for commencing arbitration against the company all in an effort and/or desire to obtain jurisdiction in New Jersey.  Even after the issue of jurisdiction had already been decided.  Defendants also sought to increase plaintiff's litigation costs and further harm plaintiff who was entitled to monetary benefits from defendants.

86. As a proximate result of the civil claim initiated at the behest and control of defendants, plaintiff has been damaged in an amount to be determined at trial.

87. As a further proximate result of the civil claim so initiated by defendants, plaintiff incurred the cost of traveling to New Jersey to retain counsel and assist in

defending the claim and attorney's fees defending against the prosecution of the known meritless claims therein.

88. Defendants' acts were willful, wanton, malicious, and oppressive in that defendants were hiding the contract in dispute from the New Jersey Superior Court in that action and attaching to the pleadings a contract that defendants knew had never been executed by plaintiff. Those acts further justify awarding plaintiff punitive damages.

**WHEREFORE**, plaintiff demands judgment against defendants, individually and jointly, as follows:

     a. For compensatory damages;

     b. For special damages;

     c. For punitive damages;

     d. For all reasonable attorneys fees and all costs of suit herein incurred; and

     e. For such other and further relief as the court may deem just and appropriate.

### THIRD CAUSE OF ACTION
(Abuse of Process)

89. Plaintiff restates and incorporates by reference each and every allegation contained in paragraphs 1 through 88, inclusive, as though fully set forth herein.

90. On or about August 28, 2000 and November 8, 2000, defendants misused the criminal and civil court processes by falsely and maliciously accusing plaintiff of grand theft and embezzlement. Those false accusations and the ensuing criminal complaint caused plaintiff to be questioned by the police and would have resulted in arrest and incarceration if plaintiff had been in possession of his vehicle. Also, plaintiff was required to defend a civil claim that was included in the ongoing arbitration process. Defendant improperly used various legal processes in a wrongful manner to accomplish a purpose for which it was not designed; to harass and annoy plaintiff without legal justification.

91. The ulterior purposes and motivations of defendants in so misusing the process in the above-described manner was to obtain a collateral advantage over plaintiff such that plaintiff would not be able to continue gainful employment.

92. As a proximate result of the actions of defendants, plaintiff has been damaged generally in a sum to be decided at trial.

93. At all times mentioned herein, defendants acted willfully with the wrongful intention of injuring plaintiff and from an improper or evil motive that was malicious in that defendants knew the automobile not to be lost or stolen and knew there was no non-compete clause in plaintiff's employment agreement. Plaintiff is thus entitled to recover punitive damages from defendants.

**WHEREFORE**, plaintiff demands judgment against defendants, individually and jointly, as follows:

    a. For compensatory damages;

    b. For special damages;

    c. For loss of earnings and future earnings;

    d. For punitive damages;

    e. For all reasonable attorneys fees and all costs of suit herein incurred; and

    f. For such other and further relief as the court may deem just and appropriate.

## FOURTH CAUSE OF ACTION
(Interference With Prospective Economic Advantage)

94. Plaintiff restates and incorporates by reference each and every allegation contained in paragraphs 1 through 93, inclusive, as though fully set forth herein.

95. While working for defendants, plaintiff maintained his own sports marketing and law practice and was able to procure a retainer from professional hockey player, David Babych, who initiated a medical malpractice and fraud lawsuit against his former employer the Philadelphia Flyers. An economic relationship existed between plaintiff and Babych as well as others, including Notjobs.com. Those relationships formed the bases of future economic benefits and/or advantages to Plaintiff.

96. Defendants knew of the above described relationships existing between plaintiff and others.

97. Defendants intentionally disputed the above described economic relationships, including, but not limited to, to falsely accusing plaintiff of stealing an automobile and attempting to obtain an injunction to halt Notjobs.com's operations as well as destroy the reputation of plaintiff's business.

98. In addition, plaintiff was unable to obtain other employment. Plaintiff was able to attract investors after creating a business plan, subscription documents and corporate books, approximately 150 customers obtained in the first 3 months of NotJobs.com's operations, were canceled after prospective investors and venture consultants were told of defendants' false claims against plaintiff.

99. Also, defendants contacted Notjobs.com's customers in an effort to ruin plaintiff's reputation. Defendants' continued harassment has in fact ruined plaintiff's reputation and has caused plaintiff considerable hardship in his efforts to procure future contracts.

100.    Said acts caused disruption of the economic relationships and as a proximate result of defendants' conduct plaintiff has suffered damages in an amount to be proven at trial.

101.    The aforementioned acts of defendants and each of them were willful, oppressive, fraudulent and malicious and therefore plaintiff is entitled to punitive damages.

**WHEREFORE**, plaintiff demands judgment against defendants, individually and jointly, as follows:

a. For compensatory damages;

b. For special damages;

c. For loss of earnings and future earnings;

d. For punitive damages;

e. For all reasonable attorneys fees and all costs of suit herein incurred; and

f. For such other and further relief as the court may deem just and appropriate.

### FIFTH CAUSE OF ACTION
(Libel)

102.    Plaintiff restates and incorporates by reference each and every allegation contained in Paragraphs 1 through 101, inclusive, as though fully set forth herein.

103.    On or about August 28, 2000, defendants caused to be published and contributed false and misleading information to the West Long Branch Police

Department which recommended to the Monmouth County Prosecutor charges of embezzlement be brought against plaintiff.

104.    The allegations against plaintiff contained in the West Long Branch criminal complaint are false as they pertain to plaintiff.

105.    The West Long Branch complaint is libelous on its face. That complaint clearly exposed and continues to expose plaintiff to hatred, contempt, ridicule, and obloquy because it falsely alleges facts asserting the crime of embezzlement having been committed by plaintiff.

106.    The West Long Branch complaint was seen and read by, among others, plaintiff's former co-workers, clients, and prospective employers in California and New Jersey.

107.    As a proximate result of the above-described publication, plaintiff has suffered loss to his reputation, shame and mortification all to his general damage in an amount to be determined at trial.

108.    The above-described publication was published by defendants with malice in that defendants provided false and misleading information to the West Long Branch Police Department entitling plaintiff to an award of punitive damages.

**WHEREFORE**, plaintiff demands judgment against defendants, individually and jointly, as follows:

      a. For compensatory damages;

      b. For special damages;

      c. For loss of earnings and future earnings;

      d. For punitive damages;

      e. For all reasonable attorneys fees and all costs of suit herein incurred; and

      f. For such other and further relief as the court may deem just and appropriate.

## SIXTH CAUSE OF ACTION
### (Slander)

109.      Plaintiff restates and incorporates by reference each and every allegation contained in Paragraphs 1 through 108, inclusive, as though fully set forth herein.

110.      That from on or about August 28, 2000 through the present defendants spoke words concerning the plaintiff including, but not limited to, the following:

      a) That plaintiff embezzled a company car and computer equipment and committed the crime of theft; and

b) That plaintiff could not be trusted.

111.    Those words were heard by several past and present employees of THE WORKS, OPENHIRE, OUTTASK and several clients of plaintiff as well as possible future employers of plaintiff and other persons whose names are not known to plaintiff.

112.    Those words carried a defamatory meaning because they were untrue and designed to taint plaintiff's business reputation in the community among long standing clients dealing with plaintiff at the time.

113.    Those words were understood by those who saw and heard them in a way that defamed plaintiff by ruining several prospective contracts and plaintiff's reputation. Also, numerous paying accounts of plaintiff ceased to do business with plaintiff and instead transferred their business elsewhere. In addition, because of defendants' false statements, investor interviews were canceled by possible future investors.

114.    Those words uttered by defendants were false in that they did not reflect any accurate assessment of plaintiff's actions or ongoing business.

115.    The above-described words were the direct and proximate cause of actual damages suffered by plaintiff. Damages include injury to plaintiff's business, trade,

C3942KAM                          32

profession, and occupation, to the extent plaintiff's business has now lost numerous accounts and plaintiff is unable to obtain employment.

116.    The above-described words were spoken by the defendants with malice, oppression and fraud in that they were calculated to destroy Plaintiff's business and reputation in the community.  Due to defendants' actions, plaintiff is entitled to an award of exemplary and punitive damages.

**WHEREFORE**, plaintiff demands judgment against defendants, individually and jointly, as follows:

> a. For compensatory damages;
>
> b. For special damages;
>
> c. For loss of earnings and future earnings;
>
> d. For punitive damages;
>
> e. For all reasonable attorneys fees and all costs of suit herein incurred; and
>
> f. For such other and further relief as the court may deem just and appropriate.

C3942KAM

## SEVENTH CAUSE OF ACTION
(Oppressed Minority Shareholder)

117.    Plaintiff restates and incorporates by reference each and every allegation contained in Paragraphs 1 through 116, inclusive, as though fully set forth herein.

118.    At all times relevant hereto, plaintiff was a shareholder of THE WORKS.

119.    Upon information and belief, defendants have acted fraudulently, have abused their authority and/or have acted oppressively and unfairly toward plaintiff in that defendants, in their respective capacities as directors and officers, have failed to pay plaintiff the value of shares of THE WORKS' stock issued by defendants and owned by plaintiff. The value of plaintiff's equity interest ultimately culminated in OUTTASK.

120.    As a direct and proximate result thereof, Plaintiff has been damaged.

**WHEREFORE**, plaintiff demands judgment against defendants, individually and jointly, as follows:

a.  For compensatory damages;

b.  For special damages;

c.  Order a fair value sale of shares of plaintiff's equity ownership;

d.  Appoint a custodian;

e.  For punitive damages;

f.  For all reasonable attorneys fees and all costs of suit herein incurred; and

g.  For such other and further relief as the court may deem just and appropriate.


## EIGHTH CAUSE OF ACTION
(Fraudulent Conveyance)

121.    Plaintiff restates and incorporates by reference each and every allegation contained in Paragraphs 1 through 120, inclusive, as though fully set forth herein.

122.    Defendants with knowledge of their obligations to plaintiff fraudulently transferred assets of THE WORKS to OUTTASK with the intent and purpose of avoiding, hindering, delaying and otherwise defrauding plaintiff in his capacity and status as a creditor of THE WORKS. The transfer was made without good and valuable consideration.

123.    Defendants' transfer of assets to OUTTASK rendered THE WORKS insolvent and unable to pay its obligations to plaintiff. The fraudulent actions of defendants have injured and caused damage to plaintiff.

**WHEREFORE**, plaintiff demands judgment against defendants, individually and jointly, as follows:

a. For compensatory damages;

b. For special damages;

c. For loss of earnings and future earnings;

d. For punitive damages;

e. For all reasonable attorneys fees and all costs of suit herein incurred; and

f. For such other and further relief as the court may deem just and appropriate.

## NINTH CAUSE OF ACTION
(Derivative Shareholder claim)

124.    Plaintiff restates and incorporates by reference each and every allegation contained in Paragraphs 1 through 123, inclusive, as though fully set forth herein.

125.    The individual defendants, as directors of THE WORKS, OPENHIRE, INC. and OUTTASK, failed to exercise that degree of diligence, care and skill which they should have exercised. They failed to exercise their respective duties in good faith.

C3942KAM                    36

126.    Defendants conducted corporate affairs in a fraudulent and unconscionable manner and committed self-dealing in the transfer of the OPENHIRE product and other assets of THE WORKS without adequate consideration.

127.    Defendants' transfer of assets without consideration has impermissible damaged plaintiff to whom defendants owed a fiduciary duty.

128.    As a result of defendants' breach of their fiduciary duties, they are jointly and severally liable for damages for losses proximately caused by their actions which defendants knew or should have known would damage and harm plaintiff.

**WHEREFORE**, plaintiff demands judgment against defendants, individually and jointly, as follows:

a. For compensatory damages;

b. For special damages;

c. For loss of earnings and future earnings;

d. For punitive damages;

e. For all reasonable attorneys fees and all costs of suit herein incurred; and

f. For such other and further relief as the court may deem just and appropriate.

## TENTH CAUSE OF ACTION
(Legal Malpractice claim)

129.    Plaintiff restates and incorporates by reference each and every allegation contained in Paragraphs 1 through 128, inclusive, as though fully set forth herein.

130.    Although, plaintiff did not directly engage the Giordano Firm as his attorney, he had a close relationship with The Works and the Giordano firm knew its actions in diluting the equity ownership would harm plaintiff. Based on the close relationship between plaintiff and his reasonable reliance on representations made by the Giordano defendants regarding his equity interests in The Works, plaintiff was owed a duty by the Giordano defendants not to make false representations to him.

131.    The Giordano defendants breached that duty of care by having made knowingly false representations to plaintiff regarding plaintiff's equity interest in The Works to plaintiff's harm causing him damages.

132.    In light of the relationship of the parties, the nature of the risk, and the public interest in requiring the Giordano firm to not knowingly assist in fraudulent transfer or make knowing misrepresentations to third parties such as plaintiff which plaintiff would rely upon, the Giordano firm owed a duty of care to plaintiff that has been breached causing plaintiff injury and damages.

**WHEREFORE**, plaintiff demands judgment against defendants, individually and jointly, as follows:

a. For compensatory damages;

b. For special damages;

c. For loss of earnings and future earnings;

d. For punitive damages;

e. For all reasonable attorneys fees and all costs of suit herein incurred; and

f. For such other and further relief as the court may deem just and appropriate.

**ELEVENTH CAUSE OF ACTION**
(Creditor Fraud claim)

133.    Plaintiff restates and incorporates by reference each and every allegation contained in Paragraphs 1 through 132, inclusive, as though fully set forth herein.

134.    The Giordano defendants exceeded the bounds of permissible advocacy by assisting in the fraudulent transfer of The Works' assets to OUTTASK for the purpose of eluding plaintiff in his effort to obtain satisfaction as a creditor of The Works. Furtherance of that effort to avoid plaintiff as a creditor consisted of bringing knowingly false criminal and civil complaints against plaintiff to hinder and undermine improperly plaintiff's status as The Works' creditor.

C3942KAM                39

135.    The Giordano defendants knowingly and intentionally participated in the unlawful conduct of their defendants who are defendants in this action to hinder, delay and/or fraudulently obstruct plaintiff's enforcement of the Arbitration Judgment and any and all other claims he has against defendants.

136.    Plaintiff has been injured by the Giordano defendants' actions.

**WHEREFORE**, plaintiff demands judgment against defendants, individually and jointly, as follows:

a. For compensatory damages;

b. For special damages;

c. For loss of earnings and future earnings;

d. For punitive damages;

e. For all reasonable attorneys fees and all costs of suit herein incurred; and

f. For such other and further relief as the court may deem just and appropriate.

## TWELFTH CAUSE OF ACTION
(Civil Conspiracy claim against all defendants)

137.    Plaintiff restates and incorporates by reference each and every allegation contained in Paragraphs 1 through 136 , inclusive, as though fully set forth herein.

138.    Defendants formed a conspiracy and did through their conduct and actions conspire for a common design and/or purpose. Their unlawful purpose and/or

lawful purpose to be achieved by unlawful means consisted of fraudulent transfer of assets of The Works to OUTTASK to avoid plaintiff's claims and in knowingly bringing false criminal and civil complaints against plaintiff. Upon information and belief, defendants engaged and conspired to injure and to harass plaintiff.

139.    Plaintiff has suffered ordinary and special damages as a result of defendants' conspiracy. In particular, plaintiff's reputation as an attorney has been damaged.

**WHEREFORE**, plaintiff demands judgment against defendants, individually and jointly, as follows:

a. For compensatory damages;

b. For special damages;

c. For loss of earnings and future earnings;

d. For punitive damages;

e. For all reasonable attorneys fees and all costs of suit herein incurred; and

f. For such other and further relief as the court may deem just and appropriate.

## THIRTEENTH CAUSE OF ACTION
(Aiding and Abetting claim)

140.    Plaintiff restates and incorporates by reference each and every allegation contained in Paragraphs 1 through 139, inclusive, as though fully set forth herein.

141.    Defendants, separately and together, have committed numerous wrongful acts including but not limited fraudulent transfer of The Works' assets and the filing of knowingly false criminal and civil charges against plaintiff.

142.    Defendants substantially participated in the wrongful acts set forth herein to plaintiff's detriment and damage.

**WHEREFORE**, plaintiff demands judgment against defendants, individually and jointly, as follows:

a. For compensatory damages;

b. For special damages;

c. For loss of earnings and future earnings;

d. For punitive damages;

e. For all reasonable attorneys fees and all costs of suit herein incurred; and

f. For such other and further relief as the court may deem just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, TIMOTHY McILWAIN, hereby demands a jury trial in the above-entitled action.

Attorneys for Plaintiff

By:_____
Keith A. McKenna

Dated: January 2\, 2004

## DESIGNATION OF TRIAL COUNSEL

Plaintiff hereby designates Keith McKenna, Esq. as trial counsel.

Attorneys for Plaintiff

By:_____
Keith A. McKenna

Dated:  January 2( , 2004

C3942KAM                                   43